IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARD ACTIVATION TECHNOLOGIES, INC., | |
| Plaintiff, | |
| v. | Case No. 10-cv-4984 |
| | Judge: John W. Darrah |
| 7-ELEVEN. INC.; GIORGIO ARMANI CORPORATION; CACHE INC.; DENNY'S COPORATION ; RADIOSHACK CORPORATION; SUNGLASS HUT TRADING, LLC; and BROWN GROUP RETAIL, INC. d/b/a FAMOUS FOOTWEAR, | JURY DEMANDED |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STAY**

Now comes the Plaintiff, Card Activation Technologies, Inc. ("CAT"), through its attorneys, Orum & Roth LLC, and for its response to Defendants' Motion to Stay, states as follows:

**I.**
**THE CUSTOMER SUIT AND FIRST TO FILE RULE DO NOT APPLY TO THIS CASE**

The Delaware Action has no impact on CAT's infringement claims against the defendants in this case. None of the Movants or any of the defendants in this case are parties in the Delaware Action. The claims and issues in the two actions are not identical—CAT has not asserted infringement claims against SVS in the Delaware Action.

Of the seven defendants in this case, four defendants, Cache, Denny's, Radioshak and 7-Eleven, claim to have *any* connection at all to SVS. (See, Defendants' Motion to Stay, Doc. No.

1

32, page 2) (stating that SVS supplies gift cards to Cache and Denny's and Defendants' Motions for Joinder, Docket Nos. 36 & 42). SVS brought the Delaware Action on behalf of its indemnities, *not* its customers. Here, there is no assertion that SVS is indemnifying Denny's, Cache, Radioshak, 7-Eleven or any other defendant. The Illinois cases that were stayed because of the Delaware Action are all actions pending against SVS' indemnities, which agreed to be bound by the outcome in Delaware.

Moreover, the Movant disingenuously fail to inform the court that two judges in this District have refused to stay CAT's patent infringement suits. Judge Shadur refused to impose a stay in the cases of *CAT v. BigLots Stores, Inc.*, No. 09-cv-03200 (see, Order on Motion to Stay, Docket No. 34). Judge Conlon also refused to enter a stay in the case of *CAT v. Toys"R"Us Delaware, Inc.*, No. 09-cv-02020 (Order on Motion to Stay, Docket No. 27).

A. The Customer Suit Exception Does Not Apply To This Case, And The Court Should Not Stay The Case On That Basis.

The customer suit exception allows a court to stay a proceeding filed against a manufacturer's customer if the manufacturer **subsequently** files a declaratory judgment action against the patentee. Defendants, Denny's and Cache, as well as those parties joining the motion, admit that the customer suit exception does not apply to this case. Denny's and Cache specifically state: "While the customer suit exception to the first to file rule does not apply in this case…" (Defendants' Motion to Stay, Doc 32, at page 9.) Defendants are correct in that the customer suit exception does not apply to this case, and the Court should not stay the case on that basis. Further, in order to apply the customer suit exception, each of the parties seeking a stay on that basis must agree to be bound by the judgment entered in the manufacturer's suit which is the subject of the motion to stay. *Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989).

Indeed, in each of the Card Activation cases stayed pending the Delaware lawsuit, all of the defendants agreed to be bound by the judgment.

In this case, none of the Defendants have agreed to be bound by a judgment entered in the Delaware lawsuit. Denny and Cache only agree to be bound by any "non-appealable order" entered in the Delaware case. The remaining defendants who have joined in the motion to stay do not agree to be bound by any order or judgment. Therefore, the customer suit exception does not apply to this case, and may not, as a matter of law, form the basis for a stay of the present litigation.

B. The First To File Rule Does Not Apply To This Case, And The Court Should Not Stay The Case On That Basis.

The Movants argue that the "first-to-file" rule should stay this case based upon the Delaware action, claiming that the parties to both lawsuits need not be identical if there is a "substantial overlap" of issues. This is incorrect because it is not the law in the Seventh Circuit. The Seventh Circuit provides that there is no rigid first to file rule. *New SVE, Inc.v. UAV Corporation*, No. 03 C 578 (N.D. IL 2003 U.S. Dist. LEXIS 5653 (Holderman, J.)  A court may stay a second filed action, however if an action is duplicative of another action pending in a different district court. *Id.* It bears repeating that none of the defendants in this case have brought suit against CAT. It is axiomatic that a party that has not filed suit cannot be the first to file.

Moreover, because this is a patent case, Federal Circuit law applies to issues that are unique to patent cases and Seventh Circuit decisions apply to procedural issues. *Walter Kidde Portable Equipment, Inc. v. Universal Sec. Instruments,  Inc.*, 479 F.3d 1330, 1334 (Fed. Cir. 2007). Under the precedent of either the Seventh Circuit or the Federal Circuit, the first-to file

3

rule requires identical, or nearly identical parties. *Orthmann*, 765 F.2d at 121; *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled in part on other grounds by Wilton v. Steven Falls Co.*, 515 U.S. 277, 289 (1995).

The issues in this case are also distinct from the issue in the Delaware Action, as infringement is not at issue in that action; the only issue in that case is SVS' claim for a declaration of invalidity. The validity of a patent is potentially at issue in every infringement action. To stay all other actions against unrelated parties based on a declaratory judgment action brought by SVS in another jurisdiction does not serve the interest of "sound judicial administration" as application of the first-to-file rule requires. *Orthmann*, 765 F.2d at 119.

## II.
## THIS COURT SHOULD NOT STAY THE CASE PENDING REEXAMINATION

The '859 Patent has been subjected to a series of no fewer than four separate reexamination requests, none have which have resulted in the '859 Patent being invalidated. In fact, the only reexamination that has concluded resulted in the issuance of the Reexamination Certificate confirming the patentability of the '859 Patent.

"[A] court is not required to stay judicial resolution in view of … reexaminations." *Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). "If a stay would more likely than not delay the district court proceedings without any countervailing benefit, the court should proceed with the merits of the case without the benefit of the Patent Office reexamination." *Agar Corp. Inc. v. Multi-Fluid, Inc.*, 983 F.Supp. 1126, 1127 (S.D. Tex. 1997)(denying a stay where court already had the benefit of a prior reexamination of one of the patents). As Defendants state in their Motion to Stay, the '859 Patent has already undergone one

*ex parte* reexamination and emerged intact. To stay these proceedings following a second reexamination would be unwarranted and inequitable. A party seeking to stay a case "must demonstrate a clear case of hardship if there is a danger that the stay will damage the other party." *Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*, 436 F.Supp.2d 252, 253 (D. Mass. 2006). The truth about reexamination proceedings is that the Patent Office almost always grants reexamination requests. *Telecommunication Sys., Inc. v. Sybase 365, Inc.*, Civil Action No. 2:09cv387, at 8-10 (E.D. Va. Dec. 23, 2009) (pointing to a recent statement by Judge Newman of the Federal Circuit, who stated in a concurring decision that the average pendency for *inter partes* reexaminations is 41.7 months, which can hardly be considered appropriately fast.).

Generally, there are several factors that courts review in determining whether to stay a case pending reexamination of a patent: (1) whether a stay will simplify the issues at hand and reduce the burden of litigation for the court and the parties; (2) whether discovery is complete, and whether the case is set for trial; and (3) whether a stay would cause undue prejudice or create a tactical disadvantage for the non-moving party. *eSoft, Inc. v. Blue Coat Systems, Inc.*, 505 F.Supp.2d 784, 787 (D. Colo. 2007).

A.  The Reexamination Is Not Certain to Simplify Any Issues.

Granting a stay necessarily assumes that the Patent Office will invalidate one or more claims, which is far from certain. There is no "*per se* rule that patent cases should be stayed during reexamination because some of the relevant claims may be affected." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005) (denying a motion to stay pending reexamination and noting that the Patent Office finds all allegedly infringed claims

invalid "in only 12% of [*ex parte*] reexaminations requested by a third party"). To grant a stay for that reason "would invite parties to unilaterally derail timely patent case resolution by seeking reexamination." *Id.* at 662-63.

There have been four separate requests for reexamination of the '859 Patent submitted to the Patent Office, none of which has resulted in the invalidation of the '859 Patent. The first reexamination request relating to the '859 Patent was the '459 Reexamination, which, as mentioned above, resulted in a Reexamination Certificate determining that independent claims 20 and 29 of the '859 Patent (and thus dependent claims 22, 25-28, 30, 31, 33, and 36-38) included patentable subject matter. During the '459 Reexamination, CAT amended independent claims 20 and 29 to include subject matter found by the examiner to be patentable. That patentable subject matter (found in dependent claims 21 and 32, which were cancelled in the '459 Reexamination) is also included in independent claims 1 and 10 of the '859 Patent, thus all claims of the '859 Patent include that patentable subject matter.

A second reexamination request, serial number 90/009,619 ("the '619 Reexamination") was filed on October 26, 2009. (Ex. 1, Mark Roth Decl. at ¶5). The '619 Reexamination was terminated on December 29, 2009 because the Patent Office determined that it failed to present a substantial new question of patentability. (*Id.*). As such, the '619 Reexamination had no impact on any claim of the '859 Patent.

A third reexamination request, serial number 90/011,004 ("the '004 Reexamination") was granted on November 9, 2010. (ECF 128-3, Office Action). The '004 Reexamination is currently pending before the Patent Office, and is the basis for Movants' request for stay.

6

There is no indication that the Patent Office will invalidate any claims of the '859 Patent based on the '004 Reexamination.

The fourth reexamination request, serial number 90/011,146, ("the '146 Request"), was originally filed on August 6, 2010 by the Kaye Scholer law firm, counsel for the Movants, Cache and Denny's. (Ex.1, Mark Roth Decl. at ¶7). The '146 Request relied on 15 references that were previously considered by the Patent Office, the request was rejected on August 19, 2010 because it was an incomplete request. (*Id.*). On August 30, 2010, Kaye Scholer submitted a replacement request for the '146 Request, which was rejected by the Patent Office on November 16, 2010. (*Id.* at ¶8).

Among other deficiencies, Kaye Scholer's replacement request failed to set forth a substantial new question of patentability. In view of the failure of both the initial and replacement requests, the Patent Office vacated the original filing date for the '146 Request and notified Kaye Scholer it had only one more opportunity to file a proper request or the Patent Office would terminate the '146 Request. (*Id.*). On November 24, 2010, in response to the Patent Office's second rejection, Kaye Scholer filed another amended request. (*Id.*). No action has been taken on Kaye Scholer's last amended request.

Again, there is no certainty that the current reexamination, the '004 Reexamination, will simplify any issues in the case. The Kaye Scholer law firm should not be rewarded for the filing of serial reexamination requests which are clearly calculated to delay and obfuscate the proceedings, and to gain an unfair tactical advantage for its clients.

B.  <u>A Stay Would Unfairly Prejudice and Place CAT at an Unfair Disadvantage.</u>

The '859 Patent has already been subjected to several reexamination requests, and there is

7

no limit on the number of requests that can be made for *ex parte* reexamination. In fact, Movants' counsel, Kaye Scholer, has submitted their reexamination request three separate times, all to no avail. Clearly, the reexamination requests are being filed in the hopes of acquiring an unfair tactical advantage. Courts have found that evidence that a stay is sought for tactical reasons weighs against granting the stay. *See Ecolab, Inc. v. FMC Corp.*, No. 5-cv-831, 2007 WL 1582677 *2 (D. Minn. May 30, 2007) (denying stay based in part on requestor's failure to seek reexamination "immediately upon learning of the allegedly invalidating prior art" and instead engaging in five months of motion practice).

Kaye Scholer has made numerous attempts to slow the progression of CAT's legitimate infringement claims, including filing a declaratory judgment action in Delaware; numerous motions to stay in Illinois some of which have been denied, and submitting multiple requests for reexamination. This Motion is just another attempt to stall, obfuscate, and gain an unfair tactical advantage.

A stay pending these numerous reexamination requests also unduly prejudices CAT because:

> [T]he inherent delay in reexamination proceedings, the opportunities for numerous appeals, and the apparent conflict between the parties, it appears likely that if a stay were granted, it could take more than four to five years before this case would be back before this Court.

*See MicroUnity Systems Eng'g, Inc. v. Dell, Inc. and Intel Corp.,* No. Civ. 2:04-CV-00120 (E.D. Tex. Aug. 15, 2005) (denying a motion to stay pending reexamination). At least one author has noted the potential inequity that lies in reexamination proceedings:

> Thus, just as unscrupulous applicants can harm the public by obtaining a patent through fraud on the PTO, so an inventor's competitors can deprive him of the economic benefits his patent rights would otherwise have afforded him by

8

>subjecting his patent to baseless reexamination proceedings before the PTO, casting doubt as to its validity where there should have been none.

*See* Mercado, Raymond A., *The Use and Abuse of Patent Reexamination: Sham Petitioning Before the USPTO,* at pp. 4-5 (April 26, 2010). Columbia Science and Technology Law Review, (forthcoming Fall 2010 and available online at http://ssrn.com/abstract=1554061).

If the Court were to grant a stay, the length of the reexamination process also would prejudice CAT. The average *ex parte* reexamination lasts 24.9 months. *Cynosure, Inc. v. Cooltouch Inc.*, No. 08-cv-10026, 2009 WL 2462565, 2 (D. Mass. Aug. 10, 2009). CAT could potentially be kept from pursuing its legitimate infringement claims for over two years. If not stayed, this case will have already proceeded to trial in that timeframe pursuant to Northern District's local patent rules. The prejudice to the nonmoving party must be measured not only by the delay attendant to a PTO examination, but also in terms of the length of an alternative proceeding in a district court. *Sybase, supra* at 9.

A stay would be particularly unfair, especially in light of the fact that CAT has already concluded one reexamination proceeding, resulting in a Reexamination Certificate, maintaining all four independent claims of the '859 Patent. The '859 Patent remains imbued with its statutory presumption of validity. Further, as noted above, the Patent Office invalidates all infringed claims in only 12% of *ex parte* reexaminations. *Soverain*, 350 F.Supp.2d at 662. Consequently, there is absolutely no reason to grant the Motion to Stay, as it would prejudice CAT, and would constitute a reward for the serial delay tactics implemented in the litigation involving the '859 Patent.

## CONCLUSION

CAT respectfully requests the Court enter its Order denying the Motion to Stay, reimbursing CAT its fees in preparing this response, and for such other, further and different relief as this Court deems just and equitable.

                                           Respectfully submitted,

                                           /s/Mark D. Roth
                                           Attorney for Plaintiff

Mark D. Roth
Keith H. Orum
Orum & Roth LLC
53 West Jackson
Suite 620
Chicago, IL 60604
312.922.6262

## CERTIFICATE OF SERVICE

I, Mark D. Roth, an attorney, certify that I served **Response To Motion To Stay** via ECF notification to counsels of record on December 22, 2010.

                                                          /s/ Mark D. Roth

Mark D. Roth
ORUM & ROTH, LLC
53 W. Jackson Blvd., Suite 620
Chicago, Illinois 60604
(312) 922-6262